## MERCER v. LANCASTER.

An endorsement of a promissory note procured by a principal, and given to his surety
in a former transaction, on demand made for a change of his liability, entitles such
surety to sue the endorser.

Evidence of the demand for such change in the liability of the surety which led to the
execution and delivery of the new note, is proper as part of the *res gestæ*, to show the
consideration of the note.

Notice of dishonour addressed to an endorser at the post-office at which he habitually
receives communications by mail, is sufficient, though such office be not the nearest
to his place of abode.

In error to the Common Pleas of Chester county.

*April* 7. This was an action against Mercer as endorser of a
promissory note, the execution and protest of which, with the no-
tary's recital of notice by depositing the same in the West Chester
post-office, was proved by the plaintiff. It appeared that the
drawer, having purchased goods of one Marshall, had given his two
notes therefor, with Lancaster as surety. That Lancaster having
become dissatisfied, required a change in his liability, to which the
drawer agreed; and thereupon, at a meeting of the parties, the
note in question was executed. Lancaster, subsequently to his
receiving it, took up the two original notes with his own, which he
paid before this action was brought.

An exception was taken by defendant to evidence showing the
demand by Lancaster, which led to the execution of this note, and
the matters which occurred at the time.

The defendant proved he lived three-quarters of a mile from Dar-
lington Corner, at which there was a post-office; and three miles
from West Chester, at which place the notice of dishonour had been
addressed to defendant.

The plaintiff then proved, by a notary, that defendant had once
received a notice of protest sent to him at the West Chester post-
office. The postmaster at that place stated defendant had been in
the habit of receiving a city newspaper, which was occasionally dis-
continued, through that office; that, during the year in which the
note matured, he called more frequently than since, and had once
declined receiving a drop letter in that office from the officers of the
collecting bank. He could recollect having given him two letters
within three and a-half years during which he held the office.

BELL, P. J., told the jury that, whether this was an accommo-
dation note for the use of the drawer, or was specially executed to
enable plaintiff to raise money on it, and relieve himself from lia-

bility as surety, it was valid, and might be said to be received in the ordinary course of business.

As to the notice, though the general rule required notice to be sent to the office nearest the endorser's residence, yet if he had uniformly been in the habit of using another post-office as more convenient, and of receiving his letters or newspapers through such office, notice might be sent there. Whether that was his habit, was for the jury.

The admission of the evidence, and the charge as to the consideration; that the note was taken in the ordinary course of business; in leaving the question of habitual use of the West Chester post-office to the jury without evidence, and as to the sufficiency of the notice generally, were the exceptions.

*Lewis*, for plaintiff in error.—There was no consideration here; the old notes were outstanding and not extinguished by this, nor was there any agreement to prevent a suit by Lancaster against the drawer of those notes. [*Per Curiam.*—There could be no suit while the new note was running to maturity.] But there was nothing to bind the original holder at that time; Bay *v.* Coddington, 5 Johns. Ch. Rep. 57; 20 Johns. 637. The evidence does not show that West Chester was the office he used; the nearest post-office was the proper one to address the notice at; Kramer *v.* McDowell, 8 Watts & Serg. 138.

*Hemphill*, contrà.—There is no direct mail to the office nearest the defendant's residence; every thing passes through the West Chester office, and the custom of the neighbourhood is to use that. Of this, there was evidence enough for the jury.

The evidence was part of the *res gestæ*; the demand of plaintiff to be relieved from his suretiship, followed by this note, was one transaction. The right of the surety to require the holder to sue was a sufficient consideration.

*April* 16. ROGERS, J., (after stating the case.)—It must be admitted that, on the face of the note, without more, the plaintiff is entitled to recover; but it is urged that the note is without consideration. In fact, it is an ordinary mercantile transaction, and whether viewed as accommodation paper or a note, drawn by Pearce to Mercer, and by him endorsed to Lancaster, with the special purpose of enabling the latter to raise money to relieve himself from a responsibility previously contracted as surety, it imports a legal and valid consideration. And in addition to this view of

the case, which would be decisive, it is obvious it puts Lancaster in a worse position than he would have been had not the note been executed, and this has been repeatedly held to be a consideration sufficient to support a promise. The original notes, for which the note in suit, was a substitute, having arrived at maturity, Lancaster had a right to require Marshall forthwith to proceed by adversary process, if necessary, to collect the money due. But this unquestionable right he debars himself from by accepting a note at ninety days, for it would be contrary to his agreement, and consequently a wrong to C. M. Pierce and Mercer, to require the immediate collection of the money by adversary process. A consideration is sufficient, if it arise from any act of the plaintiff, from which the defendant or a stranger derives any benefit, however small, if such act is performed by the plaintiff, with the assent, express or implied, of the defendant; or by reason of any damage, or any suspension, or forbearance of the plaintiff's right at law, or in equity, or any possibility of loss occasioned to the plaintiff by the promise of another, although no actual benefit accrues to the party undertaking; Hind *v.* Holdship, 2 Watts, 104. Here then was a detriment to the plaintiff, and forbearance or suspension of an equitable right, which, as we have seen, constitutes a sufficient consideration.

It is contended the court erred in leaving it to the jury to determine whether it was not the ordinary habit of Mercer to look to the post-office at West Chester, as his medium of communication from abroad, and of calling there for his letters and newspapers, there being no evidence that such was the fact. To this direction we perceive nothing amiss. For although there was a post-office nearer his dwelling, than the one used, in this instance, yet if he was in the habit, as the jury have found, of using that, as more convenient for his business, it was an accommodation to the defendant, as it was more likely to reach him if the notice was put into the West Chester office, and of course the defendant has no just right to complain. Indeed, had it been sent to the post-office nearest his dwelling, it is likely the complaint would have assumed a different aspect, and certainly with as good reason. It is impossible for us to say there was no evidence of the fact proper to be submitted to the jury, for although there may have been a temporary suspension of the habit of doing his business at the latter post-office, yet it was afterwards resumed, and we have no reason to believe it was known to others that his manner of doing his business, in this particular, had ever been suspended. When the facts are admitted, notice of non-payment is a question of law, but the jury must find the

facts, and in this case they were left to them, under a proper direction from the court. Although the case may not require an expression of opinion on this point, yet I am inclined to believe, that, as the case stands, notice would be good, whether given through one or the other medium.

We see no error in admitting the evidence contained in the bill of exceptions. It was relevant to the issue to prove the dissatisfaction of Lancaster, the surety in the first two notes; that Pierce, the drawee, was informed of that fact; that he offered to give a new note, with the defendant as surety; that a time was fixed for giving the new note; that Mercer, Lancaster, and Pierce, met together, and that, in pursuance of an agreement then made, the note in controversy was given. It is not obnoxious to the objection, that it is the mere declaration of Pierce, for it is introductory to the agreement, part of the *res gestæ*, and absolutely necessary to a correct understanding of the manner and reason of giving the last note, and affords an explanation of the form it assumed. It is so connected and blended with the execution of the note, that the justice of the case on either side requires the evidence. It must be remarked, that the evidence was confined to what took place at a time when neither party anticipated any controversy. Such evidence has ever been received, and is essential to the ascertainment of truth, and the administration of justice. It is, in truth, often the only mode that is left to ascertain the object and intent of the parties to the contract. And, in the case in hand, without the aid derived from this testimony, we should be at a loss to understand the reason the note was given; but with the light afforded from this source, we have here no difficulty in seeing that it is a transaction, by no means unusual, where a surety, having reason to believe that he is in some peril, asks and obtains from his principal an indemnity for being bound.

Judgment affirmed.